Hi, please, the Court. My name is Kai LeClan. Sitting with me at counsel's table is Barclay Edmondson, and we represent the appellant, Mark Price. And we appreciate the firm's willingness to step up to the plate pro bono in these matters. Thank you, Your Honor. At this time, I'd also like to reserve three minutes for rebuttal. Your Honor, the statute at issue in this case is not your typical law. What the State of Arizona has tried to do in reducing what it contends are frivolous lawsuits is to reduce nearly all of the state law claims that a state prisoner is entitled to. This law has barred virtually every claim, including any claim for property damage or loss of property, including for negligent or intentional takings, as well as any claim for physical injury, unless the inmate can establish or allege facts that he's going to suffer death or maiming or some loss of a bodily organ. Couldn't you bring an intentional taking claim under Section 1983? To some extent, Your Honor, that's possible. But the holding in Parrott and Hudson really dictate what the inmate could do in that circumstance. But didn't the Supreme Court overrule Parrott? Not that part of the holding, Your Honor. In Parrott and in Hudson, what the Court held was the inmate bringing a 1983 claim for violation of due process because of a negligent or intentional state taking couldn't establish a violation of due process because the inmate could ultimately turn to some other form of post-deprivation taking. That taking or that other post-deprivation remedy was a state law claim. In this case, the Arizona law has taken away Mr. Price's ability to bring a state law claim. And as a consequence, the holding and the teachings of Parrott and Hudson v. Palmer are basically thwarted by the fact that he cannot bring the state law claim. So the finding that the inmate in Parrott and in Hudson was not or did not have his due process rights violated was predicated on the fact that he could bring that claim. In this case, he can't bring that claim, and we come back to the fact that Mr. Price's due process rights have been violated. What the state has argued, though, is that they have provided Mr. Price with a post-deprivation remedy, which is what Parrott and Hudson have required. They argue that the state's internal grievance procedure, the prison grievance procedures, are this post-deprivation remedy. Mr. LeQuant, in this case, though, don't you first have to find whether your client has a fundamental right as defined under our jurisprudence? Does your client have such a right here? Well, Your Honor, there are two issues, actually. One is whether this statute violates equal protection. And in that situation, we'd have to look to see if there's a fundamental right at stake. And I would say absolutely. Do you have any authority for that? The authority is long settled that a prisoner has a fundamental right of access to the courts. We know that everybody has an entitlement to fundamental rights. But the contours of that right are as equally well established. Your Honor, if Your Honor is referring to the case of Lewis v. Casey. Well, Lewis, you whole bunch of cases which establish the parameters of the right to access, and it has to do with such things as the right to pursue a direct appeal, to petition for habeas relief, to challenge the conditions of confinement and the like. Your Honor, I acknowledge those cases. But that long line of cases does address more of what affirmative obligations the state must provide to make a prisoner's or any individual's right of access meaningful. A long time ago, the Supreme Court, in the case of Chambers, held that the fundamental right of access to the courts had its roots in the Privileges and Immunities Clause, and in the sense it was the right to sue and defend. Now, the cases dealing such as Avery v. Johnson, Wolf v. McDonald, Bounds v. Smith, Lewis v. Casey, all deal with what rights or what affirmative obligations a state has to provide an inmate so that his access to the courts is meaningful. And when they say that an inmate or that a state must provide prison law libraries, legal assistance programs, allow them to communicate with each other, to discuss habeas corpus petitions, those are the types of obligations that a state must have or not infringe upon a prisoner through prison regulations so that they can actually assert the fundamental right of access to the courts, which is to bring valid claims that they have under state law. Now, when they say, when Lewis talks about the tools necessary to challenge the conditions of one's confinement or to attack one's sentence, what he's saying is in the context of prison law libraries and these types of things, all that the state has to do is provide enough so that a prisoner can do those things, challenge the conditions of his confinement. But, Mr. McQuarrie, you're talking, I think, about something a little different than what we have here. As I understand it, your client is asserting what could best be characterized as an ordinary tort action. I don't know. Is it your contention that this was negligence on the part of the state, or was it an intentional act? Well, Your Honor, Mr. Price has alleged both intentional and negligent conduct. In his original complaint and in his amended complaint, he alleged takings for negligent deprivation of property as well as a breach of contract or a breach of trust related, I think, to the improper allocation of prison funds. And so it does highlight the fact that what this law does is take away his ability to bring a claim for both negligent and intentional conduct. I can appreciate from your client's perspective how he may feel aggrieved, but Daniels v. Williams, a case I'm sure you're familiar with, a U.S. Supreme Court case, it's very clear that if you've got a negligence claim, it's just there's no implication at all of procedural due process rights there. As Judge Wardlaw mentioned, if it's intentional, then you have a 1983 action. How is your client aggrieved under those circumstances? Your Honor, I think there are a lot of circumstances in which you – well, first, I would say that there are a lot of negligent takings in which there may be an issue as to whether there's a fundamental right. Well, the Supreme Court said there isn't. I appreciate that you're doing an excellent job and I compliment you, but we have to listen to the Supreme Court a little bit, don't you think? I do understand. And, Your Honor, in focusing on that aspect, which is the equal protection aspect, I'd like to highlight the fact that although the Supreme Court has held to some extent that the property right or the cause of action of a negligent cause of action may not be itself a fundamental right, the fact is that acknowledges that to some extent or that is with the understanding that to some extent there's a procedural protection behind that, whether or not – This is a due process case that I referred to, not an equal protection case. Correct. The Supreme Court has said that there is no right in that context that implicates the procedural due process right. Your Honor, I think that the case that governs that particular taking is the Parrott v. Taylor case because that case has basically said that somebody, and in particular a prisoner, must have the ability to resort to some kind of remedy. I don't think there's any dispute that the State could negligently take anything without – in the context of not within the scope of one's employment, not within the scope of governmental duties. If the State just, you know, negligently destroys Mr. Price's property, grossly negligently destroys Mr. Price's property, then there would seriously be a due process issue. And Parrott says as long as Mr. Price can file some kind of State court action, the due process isn't violated because he's given a remedy after the taking. The Court understood that before a taking, you can't entitle a person to some kind of hearing, but if the person has suffered an injury, he must be able to turn and resort to some kind of remedy. Well, that may be true in some circumstances, but you're talking about a prisoner here. We have all kinds of situations where there are immunities. We heard a case yesterday involving a serviceman. There's a Ferris doctrine. There's a claim that certain kinds are barred by servicemen. Is this any different in that sense? The Arizona law says that the State is immune from these kinds of things. He actually brought a claim. You're here. The fact that you are here and arguing this case shows that he has a right to assert something, but there's an immunity. This is not at all uncommon, is it? Your Honor, what I'm afraid to say or what I want to say is that I am here and I'm asserting his claims, but I'm asserting his constitutional claims because I'm trying to strike down the law that is preventing him from asserting his substantive claims. And if he cannot achieve that relief, then the effect will be that he never will have any kind of relief. I am here once and for all to assure that he will and all of the other inmates will have the opportunity to bring their claims because if the State does deprive them of anything, this law is in essence going to deprive them of that right. I'm running out of time. I'd like to reserve just a moment for everybody.  May it please the Court. My name is Kathy Stewart and I represent Terry Goddard, the Attorney General of Arizona presently. And there have been several prior defendants in this case because, as you know, we're now very close to going into the second decade of litigation. I could sit down and say case in point, but I want to address the merits. This is well-settled law that you can turn to to make your determination in this case, well-settled law that there is no fundamental right to sue the government in tort, whether you are an inmate or not, well-settled law that curbing inmate litigation under the rational basis test is a legitimate purpose, and well-settled law that, assuming there's a property right, and as Daniel points out, it's very questionable whether a negligent loss of property, which is all that Mr. Price alleges in this case, it doesn't allege an intentional loss of property, is even entitled to due process. The cases suggest that a grievance procedure at the prison is certainly adequate. The cases haven't had to address that point for reasons I'll get into. It's important to keep in mind what Arizona statute does. It limits relief available in state courts. Mr. Price raised the procedural due process claim for the first time on appeal, or did he raise it in the district court? The first time on appeal to this court? Here. That's an interesting question. It was certainly briefed. However, the district court's opinion does not address it, and I think it's fair to say that it would have affirmed. So you're not sure whether this was addressed in the district court? I think by silence we can assume that the court would not find a due process. You're saying what the court would have done, what I'm trying to understand. I'm talking about waiver, really. Right. Did the district court, was the issue presented by Mr. Price at the district court level? Yes, it was. It was. Okay. If I can continue, the statute, it's important, does not operate as civil death of any kind. It limits a certain kind of relief for a certain kind of tort in state court, available in state court only, and for acts committed by state actors only. And here is where it's interesting to note that it's really the civil law non-inmate cases that are most important here. Surely an inmate cannot have more rights to bring a tort suit against the government than civilians do or non-incarcerated individuals do, and both this court and the U.S. Supreme Court have made it clear that there is not a fundamental right to sue the government in tort for good reason. If there was, it would eliminate the well-established notion that states may fashion their state, their tort law rules. The notion that there should be an unfettered or unlimited fundamental right to sue the government in tort would mean governments like the federal government, the Federal Tort Claims Act that Your Honor alluded to, could not exist constitutionally. So we can go from the Ninth Circuit in the Miller case, which was cited by the district court and relied upon by the district court. That was a Federal Tort Claims Act case involving the preclusion of a suit for injury by a serviceman's child because the injury occurred in a foreign country. I think that completely undermines the argument made by appellant that somehow the amenity entitlement is limited, that only certain kinds of amenity qualify. That amenity had nothing more to do with than where the injury occurred. I found it interesting that counsel alluded to the Chambers case as stating that we're not going to joust, we're going to use courts to resolve our disputes. But in that 1907 case, it's obviously very old, the court actually upheld a jurisdictional rule that precluded a suit for similar reasons as Miller because the injury had occurred in another state and so there was no jurisdiction. In other words, not every tort claim allows for a remedy in state court. And then if we move on from there, again, I think the Martinez case couldn't be more on point. It did involve a terrible, terrible injury, a wrongful death. And that suit was appropriately barred in deference to the state's right to fashion its own tort rules, in that case, parole immunity decisions. Concentrating on the inmate, then cases, again, the line of cases from Taylor starting in this court, then Madrid, Lewis, Bounds, all of those established what's most important is that the fundamental right of access to the courts is limited. And it's limited to those challenges to sentences and to unconstitutional conditions of incarceration, not just any conditions of incarceration. I think it's also important to point out I would disagree with the district court's conclusion when it certified the question to the Supreme Court that the Merrick case has no precedential value. The Merrick case was decided by the Court of Appeals in Arizona and specifically found that this statute was constitutional and did not violate due process. It was vacated on appeal to the Supreme Court on a single issue, went up on appeal, and that was whether the forfeiture of earned release credits operated retroactively. The Supreme Court disagreed with the Court of Appeals analysis that it was not retroactive and vacated it. Overbroadly, nothing undid the finding by an Arizona court that 1231.201.01 is constitutional, and Merrick, importantly, cited to Daniel. And Daniel has established that negligent loss of property does not arise to the level requiring constitutional protection, certainly not giving way to substantive due process rights and not giving way to right to procedural due process either. So as I'm listening to your argument, you're not really arguing that the state has to even satisfy the rational basis test because the fundamental right of access does not include claims like this. No, I don't think that that's what I'm arguing, Your Honor. The right of access clearly is obstructed by this statute, this immunity statute, but it's not a fundamental right of access that's interfered with. And so we would apply the rational basis test as they did in Martinez and as they have done in similar cases. And certainly there is just a wealth of authority and none to the contrary that curbing prisoner litigation is a legitimate purpose, largely because it is reasonable to conclude that there is a disproportionate number of inmate cases in which the subject matter at issue, the significance of the claims is far outweighed by the burdens. And this isn't just the cost to the state, it's the cost to the taxpayers, it's the burden on the judicial system, it's the burden on the prison system in terms of having to accommodate trips out of the prison. And as the Court pointed out in the Lumbert case, there are lots of incentives other than success in this litigation for inmates to pursue this, and very little or no opportunity cost. In other words, a trip out of the prison to a deposition or to a courtroom is obviously something that inmates enjoy. So this is not a civil death context by any stretch of the imagination. It does nothing to preclude claims against non-government actors of any kind. It does nothing to preclude non-negligent, more serious takings, as Your Honor has alluded to, which at a point when they become egregious, which is sort of the hyperbole in the briefing here, it's so egregious, you know, it doesn't even allow egregious interferences. That would give rise to a Section 1983 claim in state court or federal court. It doesn't actually shift all the burden to the federal court, as has been suggested somewhere. 1983 claims are filed in state court as well. And obviously under the rational basis test, it may not be a perfect fit. There may be meritorious claims that are precluded, but it's important to focus on what the legislature took the time to exclude. Plaintiff's only claim, and I submit the only standing he has, is with respect to negligent property loss. But he cites to the notion that economic loss or damage to reputation would not be pursuable in a state law tort claim. We're talking about convicted felons in prison with respect to reputation damage. We're talking about economic loss in the case of inmates who are incarcerated and obviously not in the workplace. If they suffered an injury significant enough to result in significant economic harm, nothing would preclude them. Obviously, that would include some extensive bodily injury and most likely would not be barred by this statute, and would probably give rise to a 1983 claim. So in closing, if I may, there is clearly no fundamental right to sue the state in tort, whether you are an inmate or a civilian, without any felony record at all, because of the state interest in fashioning its own tort rules is paramount. It's the primary reason why it would not be possible to provide an unlimited right to sue the government in tort. And here is where the test sort of overlaps. The immunity is subject to an arbitrary or irrational test, and clearly the case has established there is nothing arbitrary or irrational about the state's effort to limit the forms of relief available in state court for torts committed by state actors only. Thank you. Your Honor, I understand I have very little time, so I'll just address a couple of points. Mr. Price did assert intentional deprivations in his amended complaint and original complaint. That's in the excerpts of record at pages 27 to 28. But in addition to that, I would like to address a couple of issues that the state emphasized and that Judge Smith had asked me about previously, and that this is really not an immunity statute. I mean, in a case by the Ninth Circuit, it's a difficult case to name, it's Newman v. Seth Warsalon, but the court held that you don't look at the nomenclature that the state uses, you look at the substance of the law. And the substance of this law is not to create some kind of immunity for governmental functions. By the state's own admission, what its purpose of creating this sort of immunity is, is just to reduce lawsuits and prisoner lawsuits. And that's the purpose, and that's not the purpose or general concept of an immunity. Even under the... Mr. Price made the point that prisoners and non-prisoners are equally disadvantaged by this statute. Why should a prisoner have more rights than a non-prisoner to sue the state? This particular statute only affects prisoners, and it's only incarcerated persons who cannot bring a lawsuit against the state. And this particular statute, as it applies to those people, bars them not by the nature of the governmental conduct or the situation, just as Your Honor referred to in the Federal Tort Claims Act yesterday. That was not the issue. In that case, what you were looking at was the context in which the claim arose. Here, the individual is barred simply by the nature of the injury that he or she suffered. And that's what's the problem with this claim. The state is not trying to say, you know, we're trying to create a situation where we can act appropriately with discretion without fear of liability. We're saying we're just barring a whole set of claims, valid or invalid, just because we want to reduce prisoner lawsuits. That, whether it fails the strict scrutiny because it impinges upon the fundamental right of access, or whether you look at it as an arbitrary or capricious standard if you even view the statute as an immunity law, or whether it fails rational basis, it's just not rationally related to the end, a legitimate end of reducing what might be frivolous lawsuits. What it does is it just bars an entire class of claims. And I would say it includes intentional claims. And that's a big problem, too. So I'll close, Your Honor, and ask that this Court reverse the district court. Thank you, counsel. Thank you, Your Honor. Both of you for your argument, and I urge this argument will be submitted. Thank you. We'll next hear argument in Longes Garcia. Thank you.
judges: Rymer, Wardlaw, Smith